Oral argument not to exceed 15 minutes per side. Mark Roy Bindura for the appellant. Good morning, Your Honors, and may it please the Court, Mark Bindura appearing on behalf of Plaintiff Appellant Pamela Sutherland. This is an appeal from a summary judgment granted to Defendant Dow in a breast implant case on statute of limitation grounds. In its response, Dow has raised a causation question. I plan to rely on my brief for that, but I did want to point out that one of the other plaintiffs in this case, Ms. Ezra, had filed an improper appeal on the causation case, and the summary judgment against her was reversed. I know it's not precedential or anything else, but I wanted you to be aware of that. Is that case cited in your brief? No, it was decided, it was a proper one-page, two-page form. Do you have something before us other than the statute of limitations problem? They raised a causation question by either cross-appeal or appellee brief, which I address in my reply brief. We have that before us, too. You do have that before us, and as to that, I'll rely on my brief. I was just pointing out the potentially related case. In this case, my client filed her lawsuit in January of 1993, which was one month after the implants were removed, because it was determined that they were the source of the autoimmune injuries that she had been sustaining, and sort of a cascading effect from the time of installation until the time of removal. She waited one month after removal. Nineteen years later, Dow filed its motion for summary judgment after the Michigan discovery law had changed. After what? The Michigan discovery rule on statute of limitations had changed. At the time this case was filed... I'm not sure I understand why the discovery rule is that relevant. I mean, it seems like a hard case no matter what, because in 1988, after the implants, I mean, she has a lot of problems. She's a healthy person before that. She has a lot of problems. She's even hospitalized, and even under the discovery rule test, that test doesn't mean you get to wait until someone says, you know, this product caused this injury. Actually, under Virginia law, it does, but I apologize for interrupting. I thought it was a form of inquiry notice, and, you know, you can't... Actually, the Virginia statute... Did you rely on the Virginia law below in choice of law? Was that in the district court? The plaintiff's trial attorney simply said Michigan has nothing to do with it. But, okay, did it say Virginia law applies? No. What happened was... And was the sentence, Michigan law has nothing to do with it, supported with any argumentation as to why you would say Michigan has nothing to do with this? It was directed towards statute of limitations. Bear in mind, this was four cases in which Dow had filed four different summary judgment motions, which were estimated at like a thousand pages. And so what her trial counsel did was put together a variety of terse responses, which were not as focused, frankly, as they could and should have been. The district court said there is a potential choice of law problem, whether it's Michigan, Virginia, or North Carolina. She identified the three potential fora, or fora whose law could be applied, and said it doesn't matter because it was discovered prior to the applicable period under any of those. The Virginia statute specifically says 8.01-249 sub 7, in products liability actions against parties other than the healthcare providers, for injury to the person resulting from or arising as a result of the implantation of any prosthetic device for breast augmentation or reconstruction, when the fact of the injury and its causal connection to the implantation is first communed to the person by a physician. So if you've got those three, you've got Michigan's, you've got the Virginia one that you discussed, and then if you're in North Carolina, you've got the diagnosis rule, right? So probably that leads us back to the record as to the court's decision below indicates that the statement in the deposition that I went because I was sick with these implants qualifies as discovery. What does the record tell us, the medical record tell us about when she knew that the implants were causing her problem? There is nothing in the summary judgment on the medical records themselves. In her deposition, Ms. Sutherland says on several occasions, bearing in mind that this is like 20 years after the fact, you'd have to look at the medical records for that, I'm not sure, on dates, but I encourage you to look at the medical records. So she suggested that that be done, but the records themselves were not part of the summary judgment litigation. What she testified to was in the fall of 1988, shortly after the implantations, she began having some of the difficulties, which multiplied and became different symptoms in 91 and 92. And initially they told her that it was believed to be a result of the anesthesia which was applied for the implantation process. She goes to her doctor and they say, give it six months, if that's the problem it should clear up. She then goes back and says, I'm still having these symptoms. They say, well sometimes it can take as much as a year. She further testifies that during this time, they didn't know what it was. This is in the early stages of breast implant litigation and the scientific recognition of silicone toxicity and the like. She testifies, in effect, that she didn't know, the doctors didn't know, they recognized the symptoms, but not the causation. Finally, in 1992, in December, they are removed because by that time it is determined that that is the source. Let me ask you this. Do we need to determine this? I thought we only need to determine what statute of limitations applies. That is, either we would opt for a uniform rule in bankruptcy, uniform federal rule, or we would opt for a choice of law, a statute of limitations, for example, North Carolina, if that has the most contacts and so on. Isn't that all we have to decide here? That's the starting step, I believe, because that tells you whether there's a discovery rule. The district court just decided Michigan law applied, right? Right. If the district court is wrong about that, we would write an opinion saying you're wrong about that. We think that X, Y, or Z statute of limitations would be the governing law, and we send it back to you for application. Isn't that what we would do here? That's certainly one likely and probable outcome, I suggest. Alternatively, what you could do is say, because everything has been presented on the basis of her deposition, you could say the statute which applies is that of North Carolina, which has a discovery rule, and we find that the facts are such that reasonable jurors can reach opposite conclusions. How does the North Carolina discovery rule work? The North Carolina discovery rule, for fraud, count nine of the complaint alleges fraud. The North Carolina statute, which is 1-52, subsection 9 says, for relief on the ground of fraud or mistake, the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. And so what's this discovery rule for run-of-the-mill product liability? The general rule absent fraud, if you look at the other counts, the product liability, subsection 16 shall not apply until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant. And North Carolina also has a disease exception, does it not? And the disease exception requires diagnosis? I believe that to be the case. I can't put my finger on it. I have one other question. Are there very many cases in which the courts have held that because it's in bankruptcy, a uniform national statute of limitations rule should be applied? I'm not aware of that. You're not aware of any such cases? No. What I've seen is this, and here's the background of this particular case to give you some idea of the complexities. The case is initially filed in the federal district of North Carolina. At the time, there's multi-district litigation pending in Alabama, so it shifted from North Carolina to Alabama, which has nothing to do with it. Then Dow files for bankruptcy in because of the bankruptcy stay, everything is put on hold. There is then the plan for the facility, and after that, people whose claims are not resolved through the facility now have the opportunity to pursue individual actions. So the way this thing derived, the current action, is in effect, I would guess, a diversity action in Michigan which arose from the bankruptcy but may not be governed by the rules that would apply if it were being pursued as a contested claim in bankruptcy. If I can simply follow up on the earlier question of Judge Sutton on whether a discovery rule would help, the cases say, at least under North Carolina and Michigan, I didn't find anything in Virginia, that it's subject to the traditional summary judgment standard of viewing the facts in the light most favorable to the plaintiff. Can reasonable jurors disagree? In this case, what they really have pointed at is an excerpt in which she says, were you hospitalized, or she says, I was hospitalized in 1988 because of the implants. She didn't say that she knew in 1988 that that was the cause of the hospitalization. That question was never asked. In fact, she says, I just want to real quickly go back to the forfeiture point. So the statement is, not one of these plaintiffs has any connection or nexus to the state of Michigan, yet defendants try to use Michigan law primarily. That's it. No argument that it's North Carolina law, no argument that it's Virginia law, no argument about nuances of which type of Michigan law. I mean, we have, I'm reading from one case, but I mean, we have lots of cases saying this very point, conclusory allegations and provocatory statements unaccompanied by citations or some effort at legal argument do not meet the standard. To preserve the argument, then the litigant not only must identify the issue, but also, I'm not even sure that happened, but let's say it did, must provide some minimal level of argumentation in support of it. I mean, if you're Judge Hood, you're saying, this is a bait and switch. I mean, you didn't tell me these other theories. Now I'm getting reversed for not being all-knowing and all-seeing as to these other arguments. Well, I think that your point would have more force if the court had not decided it in her opinion. But the point is, she does say there are three alternative laws that could be applied, and she said that they all yield the same result. So if the... So she creates her own error, I guess, is your point. Maybe facilitated by the lawyers, but... I mean, that's sort of a... Yeah. Plastic way of putting it, but you could say that I would put it a little more benignly, which is that since the issue was raised and decided by the court, it is proper for this court to review that. Yeah, that's a fair point. Okay. Thank you. Good morning, Your Honors. Robert Goldstein on behalf of the litigation facility, and with me is Doug Schottinger. Can you respond to this last point, which seems like a good one, that you might say this was forfeited, but district courts... Same with us. If we decide to address an issue, we've addressed an issue. It's now, why can't someone seek reversal on something we addressed, whether we should have or not? Your Honor, what happened in the district court, the Judge Hood was made aware of the other statutes and limitations and the discovery rules in our briefing. The plaintiff did not. I guess I'm not... The point he's making, and the point I'm following up on, is who cares? Let's imagine a situation where no one says anything about choice of law, and yet the district court judge decides to address choice of law, says there are three options, says here's why Michigan law applies. Can't you then challenge the decision that Michigan law applies as opposed to North Carolina, Virginia? Well, I suppose you can even though you haven't addressed it as that party who had... Okay, but then getting back to what happened with Judge Hood, I think... Well, so maybe if we can address it so the idea is not forfeited, what's the argument as to about why Michigan law still should apply? Your Honor, first of all, Michigan law should apply. It's based on what the law of Michigan is at the time the court decided this, but what I'm trying to say is... No, I'm making a choice of law point. A choice of law. Your Honor, even if you look at all the choice of law that we have available here, North Carolina, Virginia, and Michigan, it still yields the same result. Some courts have applied a uniform national rule when it's in bankruptcy, right? I'm not aware of it. I think there's a conflict as to which law is to apply. But in this situation, because of what the facts we have, it doesn't go into an analysis of choice of law questions as to statute of limitations. And if I can briefly just analyze that aspect of it. In other words... Well, let me ask you this. If she is wrong about Michigan law being the law that applies to this, and some other... North Carolina, let's say, is the state. Shouldn't we send it back to her and decide under that? Because there may be... She hasn't looked into that, and we need a record about it. Well, I think she did look in it. She said that there were potentially three other states that were available, but she didn't... Why should we decide it here now rather than remand that question? Because it's unnecessary to remand it, because she wasn't aware of those three other states. If she's wrong about Michigan, why shouldn't we remand it? Let me get him back... I'm assuming now, for the question, that she's wrong about that. Well, then we're getting into the discovery, which is what plaintiff is contending applies, the discovery rule. You're answering Judge Merritt by saying, your view is she loses under all three. That's correct. That's your answer to what he's saying. That's my answer. Now, how do you respond to the Virginia statute that was just read to us? First of all, what was cited was a statute that was enacted after her cause of action had already been time barred under the Virginia statute, which Brother Counsel did not cite to the court. That statute is a 1992 statute. At the time before that statute was enacted, Virginia had basically a time of the harm was caused, which would have been the date of the implantation. That statute was two years, and that would have expired in 1990. The Virginia statute that he's relying on was enacted in 1992. And in the cases that we cited in our brief, the fact that the statute was enacted does not revive cases that are otherwise time barred. And that's the thing he did not present to the court. What about North Carolina? North Carolina. North Carolina has a diagnosis rule for diseases, so why wouldn't he? But that was, I believe, that was not applicable at the time of this. We're back to the discovery of should have or ought to have known. And we then have her testimony, which I think the court's aware of what her testimony is. I'm sure I understood your answer to are you saying the diagnosis rule came in later also? That's my understanding. Yes, Your Honor. But it was a discovery rule before that? It's a discovery rule which was cited. The discovery rules that was declared by opposing counsel, and I can read that, is what was in effect. And the discovery rule was in North Carolina, the statute says, provides that claims must be convinced within three years of the date the bodily harm becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. So we're back to her testimony in meeting that statutory language. Or you're back to the medical records. What did your examination of the medical records show regarding when she would have discovered that it was the implants that caused her illnesses? Well, there was... Excuse me, Your Honor. There was... It was based on her testimony is what we have. Yes, but what she said... Medical records had these symptoms. I'm struggling with that because she says, I didn't know, well, I was in, I was sick because of those implants. There are several times in the deposition that she evidently says, but I don't, I didn't know that it was the implants that actually caused my illness. Go to my medical records. So you're the defendant. Did you look at her medical records? Medical records were not part of this record, Your Honor, but she did... And not available to you? They were probably available, but we were abusing it based on her testimony where she identified that she was otherwise healthy before the June surgery of 1988. And then she claims all these things, symptoms and symptomatology happened to her after. And there was, it wasn't just in the fall. I mean, she was claiming that she had all these problems right afterwards. And that's when she, and then she says, well, the question was posed, well, why were you hospitalized in September of 1988? And her response was because of those implants. And then... And if her information at that time is that the anesthesia that she took in an operation is what caused her to have all these symptoms, do you take the position that that's a discovery, that it's the implants itself and silicone toxicity that she knew of? No, but it's a standard or a discovery standard. We're saying that she reasonably should or ought to have known at that point. If we're going to go through the discovery thing, she had these symptoms. She testified the way she did. And she even said at one other point, which was pointed out by opposing counsel, that she was... As to when she finally did learn of the cause in August of 1988, quote, I didn't know if the doctor told me that the condition was from the implants at the time, but she knew that she had these symptoms and she was fairly certain that there was a cause associated in her mind with the implants at that time. If we have a discovery rule here, then we have a factual issue, don't we? I don't believe there's a factual issue in light of her testimony. When she discovered it, we can just abstract that out of the sky somewhere? No, I'm pointing to her deposition. We have to... When she discovered it is a conclusion that we have to have some facts about, because that depends on what was going on in her mind, in her brain, right? And we don't know that until we see what all the facts are. Isn't that true? But she testified as to the facts, Your Honor, based on the deposition testimony that was a subject of the motion for summary judgment. That's the whole... That was her testimony. But there are other facts in addition to... She said she wasn't sure what happened and so on back then, right? I mean, there are other facts to be brought to bear on this question, aren't there? Your Honor, based on that testimony and based at the various points where she said she had these... She would have these symptoms following the surgery and then she would continue to have symptoms after that. And then I don't know that that would... Under a discovery standard, that would meet the discovery standard of... If we're going to go that route, that she ought to have known or reasonably should have known of a possible cause of action with what... She claims she was otherwise healthy before all this and then the implantation and this. And none of that is... What you are making arguments, none of that was cited by counsel in the district court in response to the motion. What we have is what her testimony is, that she was hospitalized and she was emphatic because of those implants. And there was no qualification in her testimony at that point. So what's your best argument for why Michigan law does apply? Just what's the best... The argument is that, well, you can look at the forum state or the state's interest is what we're looking at, is essentially it. And what is the state's interest? Here, this is the forum state, this is the state where the case is pending. That would be the argument that I would suggest that Michigan law would apply. Otherwise, you're going to get into an interest... Any really useful precedent that either turns on a big bankruptcy, so we want to have a uniform system where everyone's following the same rules or is there something? There was nothing clear, no, Your Honor, that we... I'm not asking for this district court decision, I'm just saying in general, conflict of laws... There was nothing that we were able to find, Your Honor, or I could find. Okay. And then if there are any other questions on that point, but I don't believe it's even under the discovery rule, and I think the court had that information in front of it at the time, but was based on the deposition testimony and other records, including the notice... So your basic point is on any of the rules for accrual of a cause of action, with discovery or without, that existed in the late 80s, if someone is in their deposition says, I was hospitalized because of these implants, that's enough under any test. That's your basic point. That's my essential point, yes, Your Honor. And then just to briefly address the alternative argument, again, I'll rely on the cases that I cited in there. The Ezra decision, which was referenced by opposing counsel, was reversed, but it's now subject to a motion for en banc rehearing. The motion hasn't been granted yet, but the cases that we have cited in our brief are still the precedential cases involved in the determination of establishing a general causation requirement. Okay. I think we understand your argument. Thank you. Thanks so much. Thank you. So, Mr. Bandura, I mean, one thing I guess, I've just never seen it before, and maybe there's a citation that will allow it, but the idea that when a party testifies in a deposition, so here the tough testimony is, I was hospitalized because of the implants, that you're allowed to say, oh, you know, that's not what she thought at the time, that's what she's saying later, and what she's saying later is that's just characterizing the complaint. I've just never seen someone be able to do that with deposition testimony by a party. A couple things. I would have thought the testimony is about the event at the time. That doesn't count because I gave the testimony a lot later. No. What I'm saying is this, that her testimony, if you look at it carefully, says nothing about her knowledge in 1988, which is the critical question we're looking for. What she says is in 1988, I was hospitalized because of implants. No, I know. That doesn't necessarily mean that... I don't know. So your essential point is, in terms of knowledge, the knowledge takeoff point is the date of the deposition, right? Isn't that what you're saying? No, the knowledge takeoff position is in 1988. What she says 20 years later reflects what she knows at that time, not what she knows at that time. That's exactly the point I'm making. So your point is that if she testifies 20 years later, all that tells you is knowledge 20 years later, not what she's reflecting back on. All I'm asking for, I've just never seen the argument. It seems very clever and maybe right, but I've just never seen it. I mean, do you know of a case where a court has said, even though she was being asked... I mean, the point of the inquiry was about the 1988 events. I don't know about case law, just because I think this is so specific. What is the meaning of that one sentence? It's a very big deal if you say deposition testimony in terms of knowledge. The takeoff point is the date of the deposition as opposed to the time period the deponent is reflecting on. Well, I think all the discovery rule case law looks to what your knowledge was at that time. That issue that you're talking about is an issue of fact, isn't it? Exactly. And with respect to the question of anesthesia, I just wanted to point you to pages 67 and 68 of her deposition if you're looking for that. And page four of my brief quotes her, uh, they didn't know what was wrong with me when I first got sick. Nobody could tell me what was wrong at that time. I couldn't find out what was wrong with me and I was scared. I do not know what caused it. I'm not a doctor. So your position is this is a factual question, because I'm struggling with whether a comment like that can carry the weight that's being placed on it, which is your argument in light of the entire deposition, that statement is not an admission that she knew of silicone toxicity when she went in in 1988. Exactly. Two different aspects, but I guess they're related. She didn't know the diagnosis for sure, but I was thinking it was pretty clear she knew the implants were causing problems. No, they first said that was a reaction to the anesthesia. Well, I mean, she says I was hospitalized because of the implant. Bear in mind, Dow says 25 years later it has no causal connection to it, and yet you expect a layperson to know? No, no, no, but that's that is taking you to a diagnosis type of discovery rule. I'm assuming, as it turns out, those rules were not in place at the time, right? So I'm that's why I'm back at the other discovery rules. Okay, well, again, I think that there is case law that says if the witness makes contradictory statements, and I don't concede that they're contradictory, but if that's the case, it's still for the jury to decide which of those versions is to be believed. That's fair enough. Thank you. Okay, thanks to both of you for your oral arguments and your helpful briefs. We appreciate it. The case will be submitted, and the clerk may call the next case or set of cases.